IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROGER RICHARD DAINS, ) | Bankruptcy Case No. |
| dba DO-ALL SERVICE, LLC, ) | 07-20419-drd-7 |
| Debtor. ) | |
| _____ ) | |
| DONNA DAINS, ) | |
| Plaintiff, ) | |
| v. ) | Adversary No. 07-2038 |
| ) | |
| ROGER RICHARD DAINS ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This adversary comes before the Court on the Objection to Discharge ("Objection") filed by plaintiff Donna Dains ("Plaintiff") against Roger Richard Dains ("Defendant" or "Debtor"). Plaintiff seeks to have the debt owed to her by Debtor deemed nondischargeable under 11 U.S.C. § 523(a)(2)(A) & (6) and Debtor denied a discharge under § 727(a)(2)(A), (3), (4)(A) & (D)[1]. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) & (J) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies the claims in Counts I, II & III of Plaintiff's Complaint and Plaintiff's requests to have the debt declared nondischargeable and

---

[1] The Court notes that Plaintiff did not argue or state a claim in her Objection regarding § 727(a)(3) or (a)(4)(D). These sections were merely included in the heading of the Objection. Thus, the Court will deny Plaintiff's objection to discharge in relation to those sections since no count was alleged or prayer made in the Complaint and an amended Complaint was not filed to include those Code sections.

Debtor's discharge denied. Further, the Court denies Debtor's counterclaim seeking attorney's fees.

## I. FACTUAL BACKGROUND

Plaintiff is the mother of Debtor. Plaintiff purchased a 1977 mobile home in 1997 for $2,500. In 1999, Debtor moved into the mobile home and agreed to make certain repairs to the home. Debtor operated a business called Do-All Services, L.L.C. In August 2003, Plaintiff loaned Debtor $2,000 to enable him to pay some of his business debts. Subsequently, Debtor repaid Plaintiff $1,000 on the loan. On May 25, 2006, Plaintiff filed a lawsuit in state court seeking rent and possession of the mobile home at issue. Thereafter, Debtor moved out of the mobile home but has not paid any rent to Plaintiff. On March 19, 2007, Debtor filed a Chapter 7 bankruptcy petition and Plaintiff filed this adversary complaint on September 17, 2007. Plaintiff alleges that Debtor falsely represented that he would repay her the loan amount in violation of § 523(a)(2)(A), that he caused damage to the trailer and other personal property in violation of § 523(a)(6), and that he violated § 727(a)(2)(A) and (4)(A) by transferring property of the estate and making a false oath or account on his Schedules. The Court held a hearing on November 15, 2007.

## II. DISCUSSION AND ANALYSIS

### A. Exceptions to Discharge

#### 1. General Principles

In a nondischargeability claim under 11 U.S.C. § 523(a), the burden of proof falls on the creditor to prove the elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Exceptions from discharge, however, are strictly construed so as to give the maximum effect to the policy of the Bankruptcy Code to provide debtors with a "fresh start."

*Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) affirming the Eighth Circuit's opinion in *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997) (en banc) (debt cannot be exempt from discharge unless it is based on an intentional tort); *Adams v. Zentz*, 157 B.R. 141, 144 (Bankr. W.D. Mo. 1993).

## 2. False Representation

To establish fraud under § 523(a)(2)(A)[2], the following five elements must be proven:

1. That the debtor made representations;

2. That at the time the representations were made the debtor knew them to be false;

3. That the debtor made the representations with the intention and purpose of deceiving the creditor;

4. That the creditor justifiably relied on the representations;

5. That the creditor sustained the alleged injury as a proximate result of such representations.

*Field v. Mans*, 516 U.S. 59, 63 n. 4 (1995); *cf. Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 (8th Cir.1987); *In re Willis,* 190 B.R. 866, 868 (Bankr. W.D. Mo. 1996). In order to succeed under § 523(a), the objecting party must prove each element of a particular § 523(a) discharge exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Plaintiff made a $2,000 loan to Debtor in August 2003 in exchange for a promissory note. *See* Plaintiff's Ex. 2. The loan was for Debtor to use for business expenses. Debtor agreed to repay the loan by October 1, 2003. Plaintiff testified that Debtor made a payment on February 13, 2004, in the amount of $250 and made another $750 payment at some point thereafter.

---

[2] Section 523(a)(2)(A) provides that a Chapter 7 discharge does not release a debt:
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
(A) false pretenses, a false representation or actual fraud, other than a statement representing the debtor's or an insider's financial condition.
11 U.S.C. § 523(a)(2)(A).

Plaintiff testified that she asked Debtor for payment after the due date and he told her he was waiting for other people to pay him money he was owed. She also testified that she asked Debtor to repay the $1,000 balance on the loan and that he told her he would pay it when he received a settlement payment he was expecting on a worker's compensation lawsuit with which he was involved regarding a neck injury. *See* Transcript, pp. 122-23. Debtor also indicated that he could not pay any more towards the loan because his business was not making any money and that he was not employed until April 2006. Transcript, pp. 105-06, 108. Plaintiff testified that $1,000 was owed to Plaintiff at the time that Debtor filed the bankruptcy petition.

In Count I of the Complaint, Plaintiff alleges that Debtor made a false representation that he would repay the loan; that he intended to deceive Plaintiff when he made that representation; that Plaintiff justifiably relied on the representation and that Plaintiff was damaged. However, Plaintiff has not submitted evidence sufficient to prove all of these allegations. The testimony indicates that at the time the loan was made on August 22, 2003, that Debtor promised to repay the loan on October 1, 2003. The fact that Debtor subsequently made payments in February 2004 and one other time thereafter lends itself to the conclusion that Debtor did not falsely represent his intention to repay Plaintiff. Further, the testimony also indicates that Debtor indicated to Plaintiff his intention to repay the debt balance once he received money owed to him or settlement payment on a worker's compensation lawsuit. This also tends to show that Debtor had the intention to repay the loan once he obtained the funds to do so and Plaintiff failed to prove that this was untrue. For these reasons, the Court finds that Plaintiff has failed to meet her burden of proof on the elements of fraud by a preponderance of the evidence and will deny Count I.

**2. Willful and malicious injury to property**

Plaintiff's Complaint asserts that Debtor damaged the mobile home and property and that any debt arising out of Debtor's actions arose from willful and malicious conduct which should not be discharged under 11 U.S.C. § 523(a)(6).[3]

Under § 523(a)(6), a debtor is not discharged of any debt for "willful and malicious injury" to the property of another. *Johnson v. Fors*, 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001). In the Eighth Circuit, the terms "willful" and "malicious" are two distinct elements, each of which must be shown to establish an exception to discharge. *Fisher v. Scarborough (In re Scarborough)*, 171 F.3d 638, 640 (8th Cir. 1999).

Plaintiff contends that Debtor willfully and intentionally caused substantial damage to the property. While Plaintiff may have a claim for property damage under state law[4], this alone does not necessarily satisfy the requirements for nondischargeability under § 523(a)(6). *See Barclays American Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875 (8th Cir. 1985) (finding conversion of property alone not enough to prevent discharge of debt); *see also, Delaney v. Carlyle (In re Carlyle)*, 2007 WL 188560 (Bankr. W.D. Mo. 2007)(debt for property damage to rental property dischargeable where not found to be caused by willful and malicious conduct); *In re Kibbee*, 287 B.R. 239 (Bankr. E.D. Mo. 2002). Plaintiff must also demonstrate, pursuant to

---

[3]Section 523(a)(6) of the Bankruptcy Code provides :
(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
. . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

[4]The Court notes that Plaintiff did in fact file a state court lawsuit immediately prior to the filing of this bankruptcy. The suit was for possession and rent and did not mention or seek any damages for alleged property damage.

the terms of that statute, that the injury to her property was willful and malicious.

In *Long,* 774 F.2d at 881, the Eighth Circuit defined "willful" as "headstrong and knowing" conduct.  The United States Supreme Court addressed the term "willful" for purposes of § 523(a)(6) and concluded that:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury .... the (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts.

*Geiger*, 523 U.S. at 61.

In order to have a meaning independent from willful, "...malice must apply only to conduct more culpable than that which is in reckless disregard of creditors' interests and expectancies." *Erickson v. Halverson (In re Halverson)*, 226 B.R. 22, 26 (Bankr. D. Minn.1998) (citing *Long*, 774 F.2d at 881).   "An injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm." *In re Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005) (citing *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996)); *see also e.g., In re Miera* 926 F.2d 741, 743 (8th Cir. 1991); *Mercury Marine Acceptance Corp. v. Wheeler (In re Wheeler)*, 96 B.R. 201, 205 (Bankr. W.D. Mo.1988); *Cassidy v. Minihan*, 52 B.R. 947, 950 (W.D. Mo. 1985).  "Malicious for purposes of § 523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act." *Halverson*, 226 B.R. at 26.  "A wrongful act is malicious if...there exists a 'knowing wrongfulness or knowing disregard of the rights of another'." *Fors*, 259 B.R. at 137 (citing *Erickson v. Roehrich (In re Roehrich)*, 169 B.R. 941,

945 (Bankr.D.N.D.1994)). This Court may consider both direct evidence of Debtor's subjective state of mind and evidence of the surrounding objective circumstances, and then may make appropriate inferences as to whether Debtor harbored the proscribed intent. *In re Long*, 774 F.2d 875.

Accordingly, under § 523(a)(6), Plaintiff must demonstrate that Debtor intended to injure Plaintiff's property. Plaintiff testified that Debtor broke both cables on the door of a truck box kept on the property for storage; removed the propane tank on the property that was owned by Plaintiff; caused or allowed the flooring in the mobile home to become water damaged; caused holes in the living room carpet; knocked the insulation and covering loose from the underbelly of the trailer; broke five gear boxes used to open and close windows in the trailer; broke eight storm windows that were stored in the closet and left broken glass on the closet floor; removed three window screens; removed the dog pen located on the property and gave it to a friend; and left a large amount of trash on the inside and outside of the property.

Plaintiff purchased the 1977 mobile home in 1997 for $2,500. She testified that it was in "excellent" condition but that one storm window had a crack in it. She testified she put a truck box for storage on the property in 1997 or '98. She purchased a used 250 gallon propane tank that was hooked up to the mobile home when Debtor move in and Plaintiff testified that the tank was not on the property when he moved out. She testified that she had a septic system put in but there was only cold water to the premises. Debtor moved into the premises in November 1999 and Plaintiff testified that at that time the property was fully furnished, the grass was cut and there was no trash on the property. She submitted photographs showing the condition of the outside of the property prior to Debtor moving in. Plaintiff's Exs. 19-21. Plaintiff testified that

7

she agreed Debtor could live there for six months at no charge because the water was not set up for someone to live there full time so he would have to run water lines for it to be livable and have running water in the bathroom and kitchen. Transcript, p. 132. She testified that there was insulation damage and that Debtor agreed to do repairs and maintain the yard with no trash. She testified that the arrangement was that after he lived in the trailer for six months at no charge, if he chose to remain living there he must pay $200 per month in rent and pay the utilities, beginning May 2000. She stated that he did pay the utilities but did not pay any rent, or assessments, taxes or insurance. Transcript, p. 133. Debtor disputes that he agreed to pay any rent. Transcript, p. 48.

Plaintiff testified that in April 2005 she received a letter from the homeowner's association that the assessment had not been paid and that there was trash and abandoned appliances on the property and that the association threatened to place a lien on the property because of the junk and abandoned vehicles. She testified that none of those things was on the premises when Debtor took possession. On May 25, 2006, Plaintiff filed the state court suit for eviction and Debtor moved out of the premises. Plaintiff testified that she hired a company to clean up the property for $675 and she received a bid to fix the truck box for $733. She testified the quote to replace the dog pen was $339.92 and it cost $506 to repair the windows and screens. Transcript 145-48.

Debtor disputes Plaintiff's allegations and testified that the trailer was in poor condition when he moved in and that it had no running water, no sewer, broken windows, damaged roof, hanging insulation, and had Plaintiff's personal property inside and out. Transcript, p. 46. He testified the truck box door was broken when he moved in. He testified that there was a propane

8

tank on the property but that he set it to the side and had a larger one brought in by the gas company and that Plaintiff told him she came and picked up the smaller tank that she owned. Transcript, p. 88-89. He testified that there was water damage under the sink prior to him moving in, that the other water damage to the flooring was caused by a hail storm for which Plaintiff received insurance proceeds and that the carpet was torn and the insulation underneath the trailer was already loose when he moved in. Transcript, p. 90. He testified the window gear boxes were already broken and that he bought new handles and tried to repair them and that the storm windows in the closet were already broken. Transcript, p. 91. He also testified that Plaintiff told him to get rid of the dog pen and that he gave it to his friend. Transcript, pp. 91-92. Debtor also testified that he put in a new dryer, washing machine and refrigerator and installed water lines and a water heater, repaired the ceiling and roof and did other repairs to the property. Transcript, pp. 93-94.

      The Court finds that Plaintiff has failed to establish that the damage complained of was done by Debtor or was done with an intent to wilfully injure Plaintiff and that it should therefore be nondischargeable pursuant to § 523(a)(6). The Court reaches that conclusion for several reasons. As noted, Plaintiff and Debtor both testified that there was not running water suitable for living in the trailer at the time Debtor moved in and that Debtor provided the necessary materials and labor to get running, hot water into the trailer. Debtor also testified that he provided a dryer, washer and refrigerator, and Plaintiff concurred, although they disagreed on the quality of the appliances. Debtor also testified that he did various other repairs to the property. The Court finds that the fact Debtor did some repairs and improvements to the property is inconsistent with an intent to injure the property.

Plaintiff did not provide any evidence that Debtor broke the cables on the truck box. The truck box was placed on the property in 1997 and Plaintiff testified she noticed it was broken in 2005 but provided no evidence that the damage was caused by Debtor. Plaintiff claims that the floor was water damaged but Debtor testified there was some damage when he moved in and that other damage was caused by a hail storm and Plaintiff received proceeds from that damage. The carpet was put in the trailer in 1987 and there was testimony that there was already one hole in the carpet when Debtor took occupancy. The Court believes that it is reasonable that carpet that is over fifteen years old and that already had some damage to it could sustain further damage due to its age and normal wear and tear. Similarly, Plaintiff testified that one gear box for the window cranks was already broken when Debtor moved in. Debtor testified that the other gear boxes just broke and the Court again believes that the original 1977 gear boxes could reasonably have worn out and stopped working due to age and normal use. In the Complaint, Plaintiff claimed Debtor knocked the insulation and covering loose from the underbelly of the trailer but during the trial both parties testified that it was already loose and that she had asked Debtor to repair it once he moved in. There was conflicting testimony as to the storm windows and screens, but Debtor testified, and Plaintiff admitted, that one of the windows was already cracked and she did not provide sufficient evidence that Debtor intentionally broke the remaining storm windows or screens. Plaintiff testified that the propane tank she owned was missing but Debtor testified that Plaintiff picked it up and there was no other evidence presented that Debtor removed or sold the propane tank. Plaintiff also testified that Debtor removed the dog pen, but Debtor testified that Plaintiff told him to get rid of it so he gave it to a friend. There was also testimony that Mr. Cormack, the friend in possession of the dog pen, has told Plaintiff that she

can come get the dog pen at any time. There was conflicting testimony regarding trash and abandoned property inside and outside the trailer with Plaintiff testifying that it was Debtor's and Debtor testifying that it was Plaintiff's and there when he moved in. The photographs taken prior to Debtor moving into the trailer do not show any trash on the outside of the property but the Court does not believe that Plaintiff has shown that any trash left on the property by Debtor was left there with the requisite wilful and malicious intent. Furthermore, any trash or items left on the property can be easily removed with minimal costs and is thus inconsequential and not the type of damage necessary to prove malice. As noted, Plaintiff admitted to some prior damage to the trailer and the Court finds that her testimony on the other items of damage was not credible. She contradicted herself as to whether there was running water on the premises when Debtor moved in and also whether the insulation was already loose when Debtor moved in.

Accordingly, the Court concludes that Plaintiff has failed to establish that the damage was intentional or malicious. Plaintiff's evidence fails to rise to the level of demonstrating that her claim against the Debtor arises from willful and malicious conduct such that it should be nondischargeable under § 523(a)(6). As noted, such an injury requires proof that Debtor acted with an intent to injure Plaintiff or her property and the evidence fails to establish that the condition of the trailer and other items was the result of such an intention. *See Kibbee*, 287 B.R. at 244; *see also, In re King*, 258 B.R. 786, 797 (Bankr. D. Mont. 2001) (rental property left in poor condition was not kind of injury contemplated by § 523(a)(6)).

In order to prevail in this case, Plaintiff had to establish by a preponderance of the evidence that Debtor willfully and maliciously injured the property. The Court finds that she has failed to carry that burden and that Plaintiff failed to legally establish a claim under 11 U.S.C. §

523(a)(6). Thus, the Court denies Plaintiff's Complaint under Count II.

### C. Objections to Discharge

### 1. General Principles and Burden of Proof

Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be a "harsh and drastic penalty." *American Bank of Spikard-Trenton v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr. W.D. Mo.1985). For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in the favor of the debtor. *Florte L.L.C., et al v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765 (B.A.P. 8th Cir.2002); *Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr. W.D. Mo.2003); *In re Stanke*, 234 B.R. 449, 456 (Bankr. W.D. Mo.1999). A trustee or creditor requesting that the court deny a debtor a discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *Sendecky*, 283 B.R. at 763; *Gray*, 295 B.R. at 343; *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 973 (Bankr. W.D. Mo.1997).

### 2. Concealment With Intent to Hinder, Delay or Defraud Creditors

To make a case for denial of discharge under § 727(a)(2)(A)[5], a plaintiff must demonstrate that the debtor transferred, removed, destroyed, mutilated or concealed assets that

---

[5] Section 727(a)(2) provides:
(a) The court shall grant the debtor a discharge, unless-
....
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-

(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A) & (B).

might otherwise have been available to satisfy the claims of creditors. *See Sendecky*, 283 B.R. at 763. Actual, subjective intent to hinder, delay or defraud must be demonstrated as a prerequisite to denial of discharge. *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir.1987); *Stanke*, 234 B.R. at 457; *Diamond Bank v. Carter (In re Carter)*, 203 B.R. 697, 706 (Bankr.W.D. Mo.1996); *In re Berry*, 37 B.R. 44, 46 (Bankr. W.D. Mo. 1983).

In this case, Plaintiff contends that Debtor failed to list several guns he owned and their correct values. Debtor testified that he did not own all of the guns but rather several were property of his son and also that some of the guns were moved to his friend's home not because he intended to conceal them, but because he could not keep them in his possession while living with his girlfriend due to the fact that her son was not allowed to be around firearms on condition of his parole. Plaintiff also complained that Debtor incorrectly listed or omitted certain guns and their values in his Schedules but Debtor has filed an amended Statement of Financial Affairs and Schedules that listed all of the guns and their estimated values. Plaintiff simply failed to establish what guns Debtor owned, if any, and that he did anything to conceal them.

Debtor also inaccurately listed some personal property and information regarding his limited liability company but Debtor testified that those omissions were due to confusion between what was his personal property and what was property of the company because the two were so closely intermingled. Further, Debtor's attorney took responsibility for also confusing the issues between the personal property and business property.

Plaintiff also asserted that Debtor sold property kept in a storage unit after he filed his bankruptcy petition. Debtor testified that the sale was conducted by his friends and that only a few small items of his were sold for approximately $50. Transcript, p. 107. It was also alleged

that some property was transferred to Barry Maupin but Debtor testified that those items, a salt spreader and snowplow, were owned by the LLC and were given to Maupin in exchange for a business debt. Transcript, pp. 60-61. Plaintiff also contends that Debtor sold three trailers to his friend for $300 which was significantly less than the value of the trailers. Debtor testified that he had to quickly liquidate the trailers in order to get cash to pay rent and bills and that he did not attempt to determine their value or seek a higher price. He also testified that one trailer was owned by the LLC and two were owned by him personally. Transcript, p. 101. The sale of the trailers was thus not done with the requisite intent but rather because Debtor quickly needed to raise cash to pay expenses. Plaintiff failed to contradict any of Debtor's testimony regarding his reasons for selling and transferring these items of property.

Based on the foregoing, the Court finds that Debtor has a plausible explanation for the property alleged to have been transferred and the evidence presented does not rise to the level of actual, subjective intent to hinder, delay or defraud that must be demonstrated as a prerequisite to denial of discharge under § 727(a)(2)(A).

### 3. The Making of a False Oath or Account

A debtor may be denied a discharge, pursuant to §727(a)(4)(A), if the debtor knowingly and fraudulently, in or in connection with a case, made a false oath or account. The Debtor's signature on the Petition, the Schedules of Assets and Liabilities and Statement of Financial Affairs, verified and made under penalty of perjury pursuant to Rule 1008, are declarations which have the force and effect of oaths of the kind encompassed by the discharge exception for making a false oath. *In re Bren*, 303 B.R. 610, 613 (B.A.P. 8th Cir.2004), *rev'd on other grounds*, 122 Fed. Appx. 285 (8th Cir. 2005). The proper functioning of the entire bankruptcy process is dependent upon the debtors

providing complete, accurate and reliable information in the petition and other documents submitted with the filing of the case, so that parties in interest may evaluate the debtor's assets and liabilities and appropriately administer the case. *Bren*, 303 B.R. at 613. A debtor's omission of assets from his bankruptcy schedules or statement of financial affairs may constitute a false oath under §727(a)(4)(A). *In re Davison,* 296 B.R. 841, 847 (Bankr. D. Kan. 2003).

In order to deny a discharge to a debtor under this subparagraph, the plaintiff must establish that: (1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter. *Korte v. United States of America Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001). Since an admission or other direct evidence of fraudulent intent is rarely available, actual intent may be established by circumstantial evidence. *Gray*, 295 B.R. at 343; *Weese v. Lambert (In re Lambert)*, 280 B.R. 463, 468 (Bankr. W.D. Mo. 2002). A series or pattern of errors or omissions may have the effect of giving rise to an inference of intent to deceive. *Bren*, 303 B.R. at 614; *Gray*, 295 B.R. at 344.

Section 727(a)(4)(A) provides a harsh penalty for a debtor who intentionally secrets information from the court, the trustee and creditors. "The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts. *In re Sears*, 246 B.R. 341, 347 *(citing Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992)).

In this case, there was evidence presented that Debtor inaccurately listed some expenses and income. In particular, Plaintiff asserted that Debtor was living with his girlfriend at the time he filed bankruptcy but that his Schedules did not reflect that she paid all of Debtor's household expenses except for $250 per month and a portion of his food expense. Plaintiff also alleged that Debtor

15

included expenses on his Schedule I that were in fact paid by his girlfriend, specifically the mortgage payment and utility expenses. However, Debtor testified that he was advised by his attorney that he was to list his expenses and income base on the "foreseeable future" rather than what they were at the time of filing[6]. "Mistaken reliance on an attorney's advice will excuse acts of fraudulent intent if the advice was reasonable and the attorney was aware of all relevant facts." *In re Thomas*, 2006 WL 2850353, *5 (Bankr. W.D. Mo. 2006) (citing *In re Sendecky*, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002)); *see also, In re McLaren*, 236 B.R. 882 (Bankr. D.N.D. 1999)("Reliance on an attorney's advice, if the advice is reasonable, may excuse acts that otherwise bear indicia of fraud.").

As previously discussed, Plaintiff also alleged that Debtor failed to list certain guns on Schedule B. Debtor testified that he did not believe the guns were his property because they had been left to his son when Debtor's father passed away and that he did not believe other guns were worth anything. Further, as noted, Debtor filed amended Schedules regarding the guns and their values. As stated earlier, Plaintiff also alleged that Debtor transferred certain property which belonged to the bankruptcy estate but Debtor testified the property was either property of the LLC or was of minimal value.

Based on the evidence presented and as discussed above, the Court concludes that Debtor did not knowingly and fraudulently omit information on his Schedules. It was the testimony of Debtor that he provided the information based upon the advice of his counsel and he has since filed amended Schedules regarding the guns. The Court also finds that Debtor's explanation regarding the other property that Plaintiff alleges he sold or transferred is plausible and does not lend itself to

---

[6]The Court notes, and reminds Debtor's counsel, that this is not the proper method to use to prepare Schedules. Rather, a debtor must prepare his bankruptcy petition using income and expense information as of the date of filing.

16

finding that Debtor acted with the intent required for the Court to deny a discharge to Debtor under §727(a)(4)(A).

## D. DEBTOR'S COUNTERCLAIM

### Attorney's Fees

Debtor asserted a counterclaim against Plaintiff seeking attorney's fees under § 523(d).[7] That section requires the debtor to initially establish that: (1) the creditor requested a determination that the debt in question was excepted from discharge under § 523(a)(2); (2) the debt in question was a consumer debt; and (3) the debt was in fact discharged. Once the debtor establishes these three elements, the burden then shifts to the creditor to demonstrate that its position was substantially justified in initiating the adversary proceeding or that special circumstances are present that would make the award of attorney's fees and costs unjust. *FCC Nat'l Bank v. Dobbins (In re Dobbins),* 151 B.R. 509, 511 (W.D. Mo.1992); *Boatmen's Bank v. Holmes (In re Holmes),* 169 B.R. 186, 191-92 (Bankr. W.D. Mo. 1994).

In this case, Plaintiff testified that she loaned the money to Debtor because he needed it for his business. Transcript, p. 124. Debtor also testified that he borrowed the $2,000 from Plaintiff because he had some current business expenses that he needed to pay. Therefore, based on the testimony presented, Debtor has not established that the debt in question was a consumer debt, but rather has shown that the loan was for his limited liability company and thus a commercial/business debt. Accordingly, the Court will deny Debtor's request for attorney's fees

---

[7] Section 523(d) provides that:
If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

under § 523 (d).

### III.  CONCLUSION

For all the reasons cited above, the Court finds the debt at issue owed to Plaintiff by Debtor is not non-dischargeable pursuant to 11 U.S.C. § 523 and declines to deny Debtor a discharge under 11 U.S.C. § 727.  Further, the Court denies Debtor's request for attorney's fees under § 523 (d).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated:     March 24, 2008                    /s/ Dennis R. Dow

                                                                              THE HONORABLE DENNIS R. DOW
                                                                              UNITED STATES BANKRUPTCY JUDGE


Copies to:
Gwen Froeschner Hart
Harry D. Boul